Good afternoon. Bill West in Cincinnati, Ohio for the Appellate Society. You're reverberating in a way that is really very hard to understand. We can move away just a little bit from your sound system. How's this for a recheck? Sorry? Can you hear this? Much better. Go ahead. All right. I'd like to reserve five minutes for rebuttal. Yes, go ahead. Again, you have to watch your own time. Yes. This appeal takes me back to my formal legal education, which was in a state where the bench was divided between law and the chancellery. During that education, equity was a required course in law school. And as a result, it prompted law students to pull their hair out trying to figure out black letter law on what equity was and what equity wasn't. And in those days, we heard the slogan, this criticism of equity, that came from John Selden about 300 years ago out of England. Equity seems to be measured by the length of the chancellor's foot. You've only got so much time. You better get to the issue. I'll get to the issue. But also, isn't this a suit for damages? What does equity have to do with it? The issue right here is the issue of equity. And that is the standards that apply on claim preclusion. And second, the standards that apply... Claim preclusion is not an equity. This is really ridiculous. Go ahead. Talk about claim preclusion. That's not an equitable doctrine. That's exactly the point that the Supreme Court made in Taylor v. Sturgill. That we're getting away from these equitable, vague, amorphous determinations, and we have standards, sharp standards, to be applied when you deprive someone of their day in court, which is a constitutional issue. And in this case, the district court ignored those sharp standards and did exactly what was prohibited in Taylor v. Sturgill by coming to a conclusion that my client's relationship with the previous litigants was, quote, close enough, end quote, to apply claim preclusion to prevent them from their day in court. Based on a case that never got to the merits, but involved a division of clients, because they didn't have standing to prosecute their case. Previous case, the stereoscope case... ...didn't represent that they were representing the cutting-edge stereoscope music pictures, LCC, however you say the acronym. I don't know how you say that. They say that's what they were doing? They did not. They represented themselves. And, in fact, the bank... ...managers of this entity, and that they, on behalf of the entity, were ignored when they shouldn't have been. I didn't hear that. I thought their argument was that they were the representatives of this entity. No, they were bringing suit for damages on behalf of themselves, and that they had no standing. In fact, the court in that case made it clear that stereoscope and its members, shareholders, had no standing to proceed... When did you see that? I read the... I mean, at some point they talked about them being third parties, but several of the determined causes of action  No, Your Honor. I'm sorry, I read it. Well, you might have read it in a brief submitted by the adverse party. No, I read it. I read it. Right. If you're talking about a letter that was sent in May, late May of 2012, which was sent as a member, stereoscope sent as a member of CESMP, then your recollection is correct. But that letter was just sent as a member, and this was sent before the theft involved, the conspiracy, and breach of fiduciary duty. It was sent before that, and it's excerpt record 75, page number 75, and the letter speaks for itself. It was just sent. But stereoscope and its subordinates had no right of action and were not permitted to amend, and I believe that case was based on standing, had no standing to sue, and it was dismissed in this court's court. Did it mention the word standing? Yes. No. I don't know about the Court of Appeals opinion, but the district court did, and this court... Court of Appeals opinion, which is the one that governs. The problem with the district court here is it ignored the standards set forth in Taylor. None of the six exceptions to the rule against non-party preclusion apply here. Now, they try to hang their head on adequate representation, that there was adequate representation of CS&P and Liberty City Movie during the previous proceeding. If you would look at page 900 of the Taylor v. Sturgill decision, you will see that the requirements for adequate representation can't be met here, because it says the interests of the party and the non-party must be aligned, and in that case, they were going at each other in litigation. Liberty City Movie was totally adverse to stereoscope and its other constituent members in arbitration, and CS&P was logged in because it was owned half by each one, so that requirement wasn't met. Secondly, that the original court, that is the district court here, did not take any care to protect the interests of the non-party, that is, CS&P and Liberty City Movie, and third, there was absolutely no notice in that case. So, under the Supreme Court's pronouncements in Taylor, there cannot be adequate representation as the Supreme Court now defines it. Now, adequate representation before the Taylor decision was an amorphous equitable standard of diffuse determinations, and the Supreme Court rejected that approach in Taylor of adequate representation and established these clear-cut guidelines. Now, if you look at the six categories right here, they are clear-cut, they're sharply defined, and... I'm confused, frankly, about the relationship between the parties, because right now, you know, the plaintiff in this action is Liberty City Movie, LLC, suing U.S. Bank. Isn't that the same entity that was found in the arbitration to have committed fraud in the escrow involving the bank? You're correct, and let me explain. It was found... If it's treated as the same entity, I would think you'd have significant problems on the merits. Well, it was found to be liable, and later on, in pursuit of that, my client's shareholders, members, secured an assignment of Liberty City's rights, because during that proceeding, the underlying proceeding, Liberty City's principals violated their fiduciary duty to the company. So you're relying on a distinction between who controlled Liberty City at the different points, is that right? That's right. It had been hijacked. So then we need to look at who controls Liberty City now, and not just at the overall, you know, shell of Liberty City. We need to look at who controls it, and then it seems you run into some problems on preclusion, don't you? No, I don't, because preclusion doesn't run in reverse. In 2014... Well, if you're saying that you get to be a different Liberty City from the fraudster found in the arbitration, and that's because different people control it, well, then maybe we need to look at those people who control it, and those people, don't they have a preclusion problem? No, because we don't pierce that veil here. We do not pierce the veil because... So then you're a fraudster, then. In the very transaction you're suing on, if you're Liberty City. Liberty City has been found liable in the arbitration for fraud. In connection with the escrow, which is the basis of this suit. And because Liberty City was manipulated in violation of duties by the malefactors. But what Judge Kahn is saying, either you are the same Liberty Mutual, in which case you're a fraudster, or you're not the same Liberty Mutual, in which case you're the individuals who are controlling it. It is the same entity. There is no different entity. So it is the same entity. All right, so it's the same entity. Go ahead. So the arbitration, I mean, it seems to me that there may be a difference there, which is that they may be fraudsters, but I guess the U.S. Bank could be fraudsters too, also? That's what we say, yes. But you are stuck with LCM being a fraudster. Well, that's what the arbitrator found, and of course that's non-appealable. So your argument has to be that, yes, we were manipulating the arbitration, but so was U.S. Bank. They helped us. That's correct. Somehow they owe us money for helping us? They owe money to CESMP or Liberty City so that money can be repaid. But Liberty City, this is another question. My understanding is that the money was, in fact, the money that was ordered by the arbitrator to be put back in escrow was put back in escrow. Is that correct? Some of it was. Right. Some money had been raised. What happened to that money? Did the individuals, the serious scope and its owners get that money? They got some of it. So we're now litigating over about $200,000? I'm sorry, I didn't hear you. So we're now litigating over about $200,000 because $500,000 has already been returned? $200,000 plus, yes. I know it's a while, but go ahead. So what we have right here is basically Liberty City never got the money itself. That money, according to the allegations of the complaint, was transferred to the malefactor's own bank account. But it came back around and went to the serious scope or its owners. Eventually it was paid in the court under an interpleader action. Right, and then? Well, some of it was paid. The rest of it wasn't. The rest of it is missing. Did the serious scope or its owners get $500,000? $500,000? Something less than that. But approaching $500,000. The district court also made an error here in its definition of the term action, which it conflated with the theory of recovery. And I would just point the court that we have here law where the court order was issued and the waiver was signed on the statute of limitations. We have case law primarily by a former judge, this Potter Stewart, in which this whole conflation of the definition of a cause of action and a theory of recovery and an action is over. It's no surprise to anybody where I practice. Everybody knows what an action is. But I think the judge, for some reason that I don't know, adopted the bank's proposal of the term action to mean a theory of recovery. I see my time is expiring. Hours are up. Thank you. Mr. Zuberi. Good afternoon, Your Honors. May it please the court, Faisal Zuberi, on behalf of the Appellee U.S. Bank National Association. This is the fourth lawsuit filed by the appellants or their principals against U.S. Bank regarding the same underlying transaction. And it's the second time that we're on appeal to this court in relation to the same. This is precisely the type of never-ending litigation that the Supreme Court had in mind when it authorized the extension of the res judicata doctrine to non-parties, whereas here they are in privity with prior litigants. And although the district... Sorry, go ahead, Your Honor. He may be in privity now, but they weren't in privity at the time of the prior action. Right? Incorrect, Your Honor. Appellants confuse and conflate the standing inquiry with the privity analysis. I'm not asking you how. Because I understand this. At the time of the prior action, the whole problem was, they didn't use the word standing, but it is true that the particular causes of action raised and litigated and found invalid were a lot of the reason they were deficient just because the stereoscope at that point was not LCA. Now is LCA. It wasn't then. And that's why they had causation problems and that's why the bank didn't owe them any duties because they were third parties to the escrow. And I'm reading through the High Circuit Memo Dispo. Go on. In other words, it was the fact that they weren't LCM that seems to have been the main reason they lost on everything they tried to litigate. Now they are LCM. But I don't know why that demonstrates that they were at the time they were representing LCM. Then they weren't. The whole problem was they weren't LCM. So your honor, the stereoscope plaintiffs pleaded that they were acting as the managing member of the appellant cutting edge stereoscope motion pictures, one of the appellants in this case, who was in turn a member of the appellant Liberty City Movie. The stereoscope plaintiffs pleaded that specifically at paragraph 14 of their complaint, which is in the excerpts at page ER 101. And the appellants have similarly confirmed that same understanding in their own pleadings at paragraph 18 of their original amended complaint in the Central District where they pleaded that stereoscope in the first lawsuit was acting as the managing member of the appellant cutting edge stereoscope motion pictures LLC, which was in turn a member of the appellant Liberty City Movie. There is a pleading. But even though they allege that, the reason that they couldn't proceed was because they weren't, in fact, either entity? No, your honor. The Ninth Circuit in the stereoscope judgment affirmed the dismissal not for lack of standing, but for failure to state a claim. I understand they don't use the word standing. But they say, for example, that it can have intentional interference with contractual relations because they didn't allege causation. That's because, as I understand it, they weren't these entities. Similarly, they can't have a negligence claim because the escrow holders do not owe duties to third parties to the escrow. Even when those parties have an interest in the escrow. So their problem was that they weren't LCM. Now they are LCM. They are LCM now. However, the current lawsuit, although it for not following stereoscope's instructions. The stereoscope lawsuit sought to impose liability on US Bank for not following stereoscope's instructions and instead following the instructions of the authorized escrow party representatives. And that's precisely what this lawsuit seeks to do. Although they've joined an escrow party to this lawsuit, the gravamen of this lawsuit is not, hey, you breached a duty that was owed to the appellant Liberty City Movie or you didn't follow our instructions. Their complaint in this lawsuit is still, hey, why did you follow Liberty City Movie's instructions? You should have followed those third party instructions. They're seeking to vindicate the exact same rights on behalf of the stereoscope plaintiffs. The interests are 100% aligned. And the reason we have adequate representation in this case by virtue of the relationship between stereoscope and the appellants is, number one, because the interests are aligned. And number two, both stereoscope and the appellants are binding alone. It's exactly what Taylor said isn't enough, right? In trying to get rid of virtual representation, the fact that they have aligned interests is not enough. There has to be some other relationship. So there are at least three non-party claim preclusion relationships in this case that were recognized by Taylor. One of those three is adequate representation. And we have adequate representation for two reasons. Number one is, in addition to an alignment of interests with stereoscope's interests, stereoscope was acting in a representative capacity. The Supreme Court in Taylor noted that those are the two factors required to create adequate representation. We also have adequate representation for an equally compelling and alternative reason. Following this court's dismissal of the related stereoscope action, the individual stereoscope plaintiffs, Clint Cronkite and David Kissel, acquired control of and reinstated the corporate status of the appellants, who were by then defunct, for the sole purpose of relitigating the stereoscope claims. The Supreme Court in the Hart Steel versus Railroad Supply Company case that we cite held that ownership and control demonstrates an alignment of interests and adequate representation sufficient to invoke privity. And that case remains good law. Although it predates Taylor, it wasn't overruled. The Ninth Circuit consistently, both before and since Taylor, regularly holds that ownership and control is precisely the type of relationship that demonstrates adequate representation under the Taylor analysis. We cite several examples from the Ninth Circuit where it has held that to be the case, including for example. But they told us that they didn't have that ownership and control at the relevant time. They may have it now, but they didn't have it then. Well, the Taylor court specifically noted that when that relationship arises, isn't a controlling factor. It did so in two contexts. Number one, in an indirect. Who brings a case, or acquires a company, and brings a case, raises the same issues or issues that could have been raised in the earlier case. But they didn't own the company at the time of the earlier case. And it's the entity that brings the suit the second time, and it couldn't have brought the suit the first time, because it had nothing to do with it. So that would not be the case. It would still be preclusive, Your Honor, because the Taylor court specifically noted that re-litigation through a proxy, regardless of when that relationship arose, is a category of non-party claim preclusion that establishes privity for the purposes of arrest judicata analysis. In fact, the Taylor court itself, in remanding to the district court, asked the DC circuit to look at whether the plaintiff in a second FOIA lawsuit was acting as the agent of the plaintiff in a first FOIA lawsuit, because the record, unlike in our case, wasn't clear. The Taylor court, as an example of that type of agency relationship, cited the US Supreme Court's United States decision, in which it was held that a US government contractor was an agent, and therefore, subject to the non-party claim preclusion proxy bar, because the United States, in that case, was directing and controlling the litigation. And at footnote 13, the Taylor court. Sorry, Your Honor, go ahead. The second litigation or the first one? Excuse me, Your Honor? The United States lost the first case, and was now directing the second one, or the other way around? The United States was a party to the second litigation. However, at footnote 13 of the Taylor US Supreme Court decision, the Taylor US Supreme Court itself noted that it was of no consequence that the United States happened to be a party to the second litigation. And if the United States had been a party to the first litigation, and was trying to relitigate the claims through an agent, its government contractor, in that case, the same agency and proxy litigation analysis would apply. The Ninth Circuit in the ATL court versus city of Seattle case that we cite, specifically held that ownership and control precluded a prior individual litigant from relitigating claims that were previously litigated by the individual through a corporation that he owned and controlled. In fact, appellants on page 14. That's the opposite. That's the opposite. In other words, stereoscope, if LCM had litigated the first case as plaintiff, and these individuals owned it at the time, and they were now trying to litigate it in their own name, or opposite, if they owned LCM at the time, wholly owned it, and brought the case, and now they're trying to litigate it as LCM, then they've got a problem. The fact is that I don't know of any of these cases where individuals on the entity were not the same at the original time, but they are now. That's just from an appellant case. And frankly, one has to be better off arguing everything else about the case, because it seems to me that there are serious limitations. The problem is there's no cause of action and everything else. But the inclusion issue is difficult. I don't think so, Your Honor, because appellants in their own reply brief on page 14 acknowledged that if stereoscope had, for example, following the stereoscope judgment, assigned its rights or transferred its assets to ABC Corp, ABC Corp would be barred from re-litigating the same claims. There's no reason why the appellant shouldn't be barred from re-litigating those claims in light of stereoscope's post-stereoscope judgment gamesmanship. They've acquired control of- You're arguing claims with them, not issue with them. As to that, on the arbitration, you're to some degree arguing issue with them. You're arguing claims with them, not with them. The reason they're not the same claims is precisely because the individual has different relationships. Your Honor, there's two relationships, right? There's the individuals who now control both entities, and there's the fact that stereoscope was acting as the managing member of the current appellants, and the appellants acknowledged that it was acting as their managing member. There's two alternative, equally compelling relationships that exist between the plaintiffs in this case. I don't think the fact that they engaged in corporate gamesmanship in order to resuscitate defunct entities to re-litigate previously disclosed of claims changes the fact that we have re-litigation by proxy here. You don't need to have adequate- They weren't actually re-litigating the same claims. They were re-litigating claims that, if they were the same entity, could have been brought in the earlier case, right? But there weren't the same claims. The res judicata doctrine applies as long as the two pieces of litigation arose out of a common nucleus of operative facts. What I'm telling you is that the actual legal claims, and you've been patronizing this, are not the same. The actual legal claims that were brought were not the same for a very good reason, which is that these different people were differently situated with regard to the situation. Your Honor, I would submit that the difference in the legal claims doesn't make a difference on the res judicata doctrine. They're still trying to hold U.S. Bank responsible for following the instructions of someone other than an escrow party. And Your Honor is correct that, in addition to res judicata, they do have an issue preclusion problem here because there's another judgment beyond the stereoscope judgment, which holds that the appellant Liberty City Movie fraudulently absconded with the very same escrow funds that are at issue in this dispute, and it did so by fraudulently presenting U.S. Bank with one set of escrow instructions while sharing an alternative set of escrow instructions with the stereoscope plaintiffs. I think this is precisely the type of situation in which the Supreme Court sanctioned the extension of both the res judicata doctrine and a situation where alternatively issue preclusion applies, based on eight years of litigation regarding the same underlying transaction. In terms of the Taylor factors, I do want to make one point, which is the alignment of the interests of the parties, the interests are aligned. People are trying to vindicate the same legal right in both cases on behalf of Mr. Clint Cronkite and Mr. David Kissel. There's no dispute about that. Number two, aside from the alignment of interests, the Supreme Court allows us to look at the proxy litigation exception, and this is a situation where the stereoscope plaintiffs, Clint Cronkite and David Kissel, are seeking to relitigate claims through a proxy. They shouldn't be able to obtain from the back door through this litigation, but they couldn't from the front door in the stereoscope litigation, because U.S. Bank owes no duty other than to comply with escrow party instructions, and no one is saying that we didn't comply with escrow party instructions. I do want to touch on the statute of limitations as well. You know, appellants argued in the district court... Go ahead. Sure. The appellants argued in the district court that the Ohio Courts judgment required the waiver of, quote, the statute of limitations with respect to, quote, any action. Appellants acknowledge the district court noted that that was not the case, because the Ohio Courts judgment specifically required the waiver of the statute of limitations with respect to, quote... Is it true that U.S. Bank's counsel drafted that proposed order in Ohio? Yes, Your Honor. Per Ohio Courts local rules... Right. So why didn't you put in there that it doesn't waive defenses that it wouldn't have had in the Ohio Court? Are we supposed to read this as excluding? Defenses that would have existed in the Ohio Court? I think the way to read that order is to read... I think the plain language of the order basically says that we waive the statute of limitations if they refile, quote, this action in the Central District of California within 90 days. They chose to file another action. My question is, do you concede that the effect of that order is to revive a cause of action that would have been time-barred in Ohio and allow it to be refiled, even though it would have been required to be dismissed in Ohio? No, Your Honor, because that's specifically why the Ohio Court limited the waiver to that action. We weren't waiving the statute of limitations with respect to other actions for which the statute of limitations had run a long time ago. Even the Ohio Savings Statute case law that the appellant cite in support of their advocacy for a broader definition of the term action imposes a limitation. It says that if the second lawsuit involves claims that were barred at the time the first lawsuit was filed, then the statute of limitations nevertheless bars those claims, and the savings statute will not save those type of claims. So do you... What is a savings statute? Are you talking about an estoppel kind of thing? What's a savings statute? What's the statute? Sorry, Your Honor? The savings statute is a statute that the appellant cite in their reply brief for the first time, and what they say is that the Ohio Savings Statute defines the term action broadly... What is a savings statute? What does it mean? Okay, the savings statute applies to toll the Ohio statute of limitations for a period of one year if there's a non-substantive dismissal, if they refile in Ohio. So do you concede that at the time of the Ohio action was filed that both of those actions were not... Both of the causes of action were not barred by Ohio law, or do you contend that one or more of them was? So the Ohio lawsuit was limited to a breach of contract claim, and then it summarily alleged a conspiracy without any details. The breach of contract claim was not barred by the Ohio statute of limitations at the time the Ohio lawsuit was filed. However, the novel tort claims that they have now alleged in this case were barred by both the California and the Ohio statute of limitations. Was the conspiracy claim time barred in the Ohio suit while it was pending in Ohio? The district court seemed to think so. So I think that the district court gave them the benefit of the doubt. The challenge with the statute of limitations argument on the conspiracy claim is that conspiracy claims are subject to the statute of limitations of the underlying tort. The problem is they didn't allege any underlying tort in Ohio, and the district court in this case noted that they similarly have not sufficiently alleged an underlying tort in California. So there's really no way to measure the statute of limitations on the conspiracy claim in Ohio because it was insufficiently stated. We would submit that because they did not refile the same lawsuit, the waiver doesn't apply. The waiver applied if they refiled the same lawsuit, and they shouldn't be put in a better position than they were in when the Ohio lawsuit was first filed. And I mean, I think... Excuse me, your time is up. Thank you, Your Honors. I think you have a minute. I'm you. I can't hear you. I hear now. ...City Movie and Cutting Edge are entitled to one hearing on the merits on their claims. They didn't get it in 2014 or 15. It was dismissed with no right to amend. That's because they were not the same as the plaintiffs there. Let me ask you the same question about the conspiracy statute of limitations. The district court said it appears to be undisputed that at the time plaintiffs filed the Ohio complaint, the Ohio statute of limitations had already run on the unlawful conspiracy claim. Was he right in saying that? I think he's wrong in saying that. Why? Because I think it was told, and it starts running from the time that the wrongdoing, the collaboration is discovered, and that was disclosed by the affidavits of Bates and Cain in 2016. And there's a four-year statute on that. The same would be true for the other claim of conversion there. So I don't believe it had run. But regardless, the waiver was unrestricted. The waiver that U.S. Bank's attorney prepared and signed says statutes of limitations, and they signed it. And I think they're stuck with that because an action includes all theories of recovery arising out of a nucleus of operative fact. In terms of what the bank has done, the bank told this court and the district court when the stereoscope case was pending that stereoscope and its principles had nothing to do with CESMP or Liberty City. They said it again and again and again. And I think they should be stopped from now asserting that they're one and the same. If there are no other questions... Well, they are currently one and the same. They are owned by the previous plaintiffs. They are controlled by the previous plaintiffs now, but certainly not then. Okay. Thank you both very much. The case of Liberty City was with the U.S. Bank of Virginia, and we are in recess. Thank you very much.
judges: Baldock, Berzon, Collins